**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

GULFSTREAM WORLDWIDE REALTY, INC.,
a Florida corporation,

        Plaintiff,

vs.                                                                                                         No. CIV 06-1165 JB/DJS

PHILIPS ELECTRONICS NORTH AMERICA
CORPORATION, a Delaware corporation,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

        **THIS MATTER** comes before the Court on the Motion for Protective Order and Expedited Hearing, filed September 25, 2007 (Doc. 78). The Court held a hearing on the motion on October 4, 2007. The primary issue is whether the Court should enter a protective order permitting NXP to erase backup computer tapes and reuse those tapes for backups during the coming year. Because, under rule 26(b)(2)(C) of the Federal Rules of Civil Procedure, the burden of requiring NXP to retain and produce its backup tapes to Gulfstream Worldwide Realty, Inc. ("Gulfstream") outweighs any possible benefit that could flow from their retention and possible production, the Court will grant in part Philips Electronics North America Corporation's protective order motion.

**FACTUAL BACKGROUND**

        This lawsuit arises out of a claim for a commission on the sale of the former Philips Semiconductors plant on North I-25 in Albuquerque, New Mexico. See Motion for Protective Order and Expedited Hearing ("PENAC's protective order motion") at 1, filed Sept. 25, 2007 (Doc. 78). The Defendant, Philips Electronics North America Corporation ("PENAC"), signed the listing agreement on which Gulfstream bases its lawsuit. See id. The real estate and personal property at

the site were sold by another, related company, Philips Semiconductors, Inc., which was a separate indirect wholly owned subsidiary of Koninklijke Philips Electronics N.V. ("Royal Philips"). See id. at 1-2. In September, 2006, Royal Philips sold the semiconductor business, and a new company, NXP Semiconductors USA, Inc. ("NXP"), was then formed. See id. at 2.

PENAC's ultimate parent, Royal Philips, retained only a 19.9% interest in NXP. See PENAC's protective order motion at 2. A consortium, including Kolbert, Kravis, Roberts & Co., Bain Capital, Silverlake Partners, Apak and Alpinvist Partners N.V., owns the remaining 80.1%. See id. Neither PENAC nor Royal Philips controls NXP. See id. Many of the employees of Philips Semiconductors Inc. went to work for NXP. See id.

## **PROCEDURAL BACKGROUND**

NXP is not and has not been a party to this lawsuit. Many of the employees of Philips Semiconductors who went to work for NXP include individuals who were subpoenaed as witnesses for depositions in this case. See PENAC protective order motion at 2. The Court instructed PENAC to work with NXP to obtain discovery that Gulfstream sought, see Order at 3-5, 7-8, filed July 16, 2007 (Doc. 44), and PENAC represents that it has done as the Court instructed, see Transcript of Hearing at 112:12-22 (McCormick)(taken Oct. 4, 2007).[1] PENAC represents that it has endeavored to work with NXP to comply with discovery requests in this case, including obtaining the documents that Gulfstream seeks, and that NXP has cooperated in other discovery aspects of this case, such as attendance of witnesses at depositions and providing documents in response to Gulfstream's requests for production and subpoenas duces tecum. See PENAC protective order motion at 2.

NXP advised PENAC that it plans to follow its normal course of business and reuse the

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

backup tapes for one of its computer systems. See PENAC protective order at 2. NXP's reuse means the existing backup tapes would be erased and recorded over. See id. If NXP does not reuse the current backup tapes, it will have to replace those tapes at a cost of approximately $60,000.00. See id. at 3. It takes a minimum of three weeks to obtain new tapes, which must be ordered at the very beginning of October, at the very latest, to allow uninterrupted operations. See id. There are 1080 backup tapes at issue. See Tr. at 115:13 (McCormick). Each tape takes approximately four hours to search because the backup tape system apparently has no search function so they have to be individually searched. See Tr. at 103:13-104:1 (McCormick). The backup tapes begin in September of 2006, which is after the May 26, 2006 closing of the sale of the Philips Semiconductor facility in Albuquerque. See PENAC's protective order motion at 2-3.

Those tapes apparently contain a few documents that Brian Sloan ("Sloan") created. See PENAC's protective order motion at 2. Sloan is one of the individuals that Gulfstream deposed. See id. NXP no longer employs Sloan. See id. Sloan's relevant electronic documents were on his laptop computer, and it was not necessary to rely on the backup tapes to produce the documents requested in the subpoena duces tecum served on Sloan. See id. The desktop files on Sloan's computer, including his Lotus Notes files, were copied and the information saved when he left. See id. Sloan printed out all the documents he thought were relevant to the subpoena duces tecum. See Tr. at 113:4-11 (Court & McCormick).

PENAC moves the Court for a protective order permitting NXP to erase backup computer tapes and reuse tapes for backups for the coming year. See id. at 3-4. PENAC and NXP are concerned that, if PENAC reuses those tapes, overwrites those tapes, and thereby deletes the backups of Sloan's documents, PENAC, as well as NXP, may be accused of deliberately destroying potential evidence. See id. at 3. PENAC is concerned that it might be accused of spoilation of

evidence if NXP erases the tape. See id. PENAC contends that an expedited hearing is necessary on this motion, because, if the backup tapes cannot be reused, NXP must order new backup tapes at the beginning of October at a cost of approximately $60,000.00. See PENAC's protective order motion at 4.

Gulfstream's counsel does not concur in this motion. See Plaintiff's Response to Defendant's Motion for Protective Order and Expedited Hearing ("Gulfstream's Response"), filed Oct. 2, 2007 (Doc. 89). In its Response, Gulfstream argues that PENAC failed to show the extraordinary circumstances required to justify the issuance of a protective order. See Gulfstream's Response at 3. Gulfstream argues that the backup tapes may contain documents from Sloan. See id. At the hearing on this motion, Gulfstream argued that the backup tapes may contain documents from other employees. See Tr. at 105:25-106:2, 113: 4-8 (Chappell). Gulfstream contends that, "[w]ithout sufficient information as to whether those documents have been produced, whether they are responsive, and what the documents contain, Gulfstream simply has to assume the worst -- that these documents set forth the information Gulfstream has been seeking but has yet to receive from [PENAC] -- a simple accounting of what happened to the property at issue in this case." Gulfstream Response at 4.

At the hearing on this motion, PENAC stated it was unsure whether the backup tapes mirrored Sloan's hard drive or not. See Tr. at 102:13-18 (McCormick). PENAC represented that the information on Sloan's computer was preserved as a separate entity and not simply "dumped only to this backup system." Tr. at 107:14-17 (McCormick). PENAC conceded that there is no guarantee that the information contained on the backup tapes is only material from 2006, see Tr. at 109:19-24 (Court & McCormick); however, it also argued that whatever information was on Sloan's laptop is not on the backup tapes NXP is trying to reuse. See Tr. at 109:19-25 (Court &

McCormick).

PENAC also acknowledged that it never looked at Sloan's computer when he responded to Gulfstream's subpoena duces tecum. See Tr. at 111:7-8 (McCormick). PENAC conceded that it did not know how Sloan's laptop information would have physically been transferred to the backup tape system, see Tr. at 11:21-23 (Court & McCormick), nor whether Sloan might have saved specifically to the backup tape system, see Tr. at 112:1-2 (McCormick). On the other hand, Gulfstream could not respond to the Court's question whether it would expend any effort to search thorough the backup tapes if they were produced. See Tr. at 104:16-21 (Court & Chappell). Gulfstream also conceded that, if NXP or PENAC could assure Gulfstream that the information on the backup tapes is still on the system, and therefore it was not going to lose a source of information, then it would have no problems with the backup tapes being rewritten. See Tr. at 106:9-11 (Chappell).

The Court indicated at the hearing that NXP should file its own motion for a protective order with an affidavit stating how many backup tapes there are, how long they take to search or that they cannot be searched, and all the other representations that PENAC had made in its briefing and at the hearing. The Court also directed that NXP should make a commitment in its motion and affidavit that it will use the backup tapes as slowly as possible, so that if the parties discover it is erasing evidence, it can salvage as much as possible for use in the case. See Tr. at 116:4-11 (Court). The Court further informed PENAC that it needed to instruct everyone that they are not to delete anything from their laptops. See Tr. at 120:19-20 (Court).

## LAW REGARDING PROTECTIVE ORDERS

The Federal Rules of Civil Procedure must be "construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. "Federal district courts

have broad discretion over discovery." Morales v. E.D. Etnyre & Co., 229 F.R.D. 661, 662 (D.N.M. 2005)(Browning, J.). A court shall limit discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

Fed. R. Civ. P. 26(b)(2)(C). District courts may also issue a protective order if "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). See Miller v. Regents of the Univ. of Colo., 88 F.3d 518 (Table), 1999 WL 506520 *11-12 (10th Cir. 1999) ("The district court is in the best position to weigh these variables because, unlike an appellate court, the district court has the ability to view firsthand the progression of the case, the litigants, and the impact of discovery on parties and nonparties."). As the Honorable Martha Vazquez, Chief United States District Judge, stated in Heuser v. Johnson, 189 F.Supp.2d 1250, 1269 (D.N.M. 2001), "a District Court may limit discovery if 'the burden or expense of the proposed discovery outweighs its likely benefit.'" Id. at 1269 (quoting Fed. R. Civ. P. 26(b)(2)(iii)).

"It is the party seeking the protective order who has the burden to show good cause for a protective order." Velasquez v. Frontier Medical Inc., 229 F.R.D. 197, 200 (D.N.M. 2005). The party seeking the protective order "must submit a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Id. (quoting Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16 (1981)). See Securities and Exchange Commission v. Dowdell, 144 Fed.Appx. 716, 722-723 (10th Cir. 2005) (noting that a third party normally may not move for a rule 26(c) protective order if it is not a party to the underlying action, has not intervened, and is not the

party from whom discovery is sought). "Rule 26(c) expressly limits who may move for a protective order to parties or the person from whom discovery is sought." Id. at 722.

## ANALYSIS

The Court will grant PENAC's protective order motion. The burden of requiring NXP to retain and produce the backup tapes to Gulfstream outweighs any possible benefits flowing from their production. The Court believes that it can put in place certain conditions that will protect Gulfstream from the remote possibility that there is useable evidence on the backup tapes.

PENAC represents that NXP is a separate company from PENAC. See PENAC's protective order motion at 2; Tr. at 112:12-14 (McCormick). PENAC represents that there is nothing relevant to any issue in this case on the backup tapes. See Tr. at 106:24-107:3 (McCormick). PENAC represents that the documents on these tapes do not relate to this matter because they are for a time period after any of the events at issue in this lawsuit. See Tr. at 106:24-107:3 (McCormick).

The cost of not reusing the tapes is substantial. PENAC represents that to avoid destroying the tapes, NXP would have to pay nearly $60,000.00 to replace the tapes. See PENAC protective order motion at 3; Tr. at 112:21-22 (McCormick). PENAC represents that it takes a minimum of three weeks to obtain new tapes. See id. PENAC represents there are 1080 backup tapes at issue, see Tr. at 115:13 (McCormick), and each tape takes approximately four hours to search. See Tr. at 103:13-104:1 (McCormick). Gulfstream did not specify at the hearing what it would do with the tapes, even if they were produced. See Tr. at 104:11-21 (Court & Chappell).

PENAC has demonstrated that the burden and expense of requiring NXP to retain the backup tapes is great, while the benefit of retaining the backup tapes is either nonexistent or low. See Fed. R. Civ. P. 26(b)(2)(iii). While the cost of not reusing the backup tapes would be $60,000 and it could take up to 4,320 hours to search every backup tape, Gulfstream is uncertain what it would do

with the backup tapes were they produced to it. Under the facts and circumstances of this case, the burden or expense of requiring NXP to retain and produce the backup tapes outweighs any benefit that could flow from retaining them. NXP should, however, as a third party, assert its own interests and understanding of the facts and circumstances surrounding the backup tapes in its own motion for a protective order with a supporting affidavit, since it is a party from whom discovery is being sought. See Securities and Exchange Commission v. Dowdell, 144 Fed.Appx. at 722-723 ("Rule 26(c) expressly limits who may move for a protective order to parties or the person from whom discovery is sought.")(emphasis added). As such, NXP should have its general counsel file a motion with an affidavit taken of somebody with knowledge at NXP regarding the number of backup tapes, the difficulty or inability to search them, their replacement cost, how much time it takes to obtain new backup tapes, details regarding how the employees' information is put on the backup system, and what information is backed up on these tapes.

**IT IS ORDERED** that the Motion for Protective Order and Expedited Hearing is granted in part. PENAC and NXP are to instruct their employees not to delete anything from their laptops. Before NXP is allowed to begin writing over its backup tapes, it must file its own motion for a protective order with an affidavit with details concerning the backup tape system. Once NXP has complied with the Court's order to file its own motion and affidavit, then NXP is allowed to begin writing over its backup tapes: however, NXP should write over the backup tapes one at a time, or as slowly as possible.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Bill Chappell, Jr.
Michael D. Hoeferkamp
Martha L. King
Chappell Law Firm, P.A.
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

Arthur D. Melendres
Zachary L. McCormick
Joan D. Marsan
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

 *Attorneys for the Defendant*