# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GULFSTREAM WORLDWIDE REALTY, INC.,
a Florida corporation,

        Plaintiff,

vs.                                                                          No. CIV 06-1165 JB/DJS

PHILIPS ELECTRONICS NORTH AMERICA
CORPORATION, a Delaware corporation,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Motion for Protective Order, filed September 21, 2007 (Doc. 75). The Court held a hearing on the motion on October 12, 2007. The primary issues are: (i) whether the Court should enter a protective order vacating the rule 30(b)(6) deposition that Gulfstream Worldwide Realty, Inc. ("Gulfstream") seeks because the burden on Philips Electronics North America Corporation ("PENAC") to prepare a 30(b)(6) witness would be too unreasonable and Gulfstream was untimely in its notice of that deposition to PENAC under the local rule 30.1; or (ii) whether, alternatively, the Court should allow the rule 30(b)(6) deposition to proceed, but be held in New York City or another location convenient to the designated witness. The Court will grant the Defendant's Motion for Protective Order in part and vacate Gulfstream's 30(b)(6) deposition because Gulfstream was untimely in providing notice to PENAC of the rule 30(b)(6) deposition under local rule 30.1. The Court will not preclude the deposition entirely, but will require it to be held in New York City or at another location convenient to the designated witness, but to which transportation is fairly accessible from Albuquerque, New Mexico.

## FACTUAL BACKGROUND

PENAC executed a listing agreement with Gulfstream.  See Motion for Protective Order at 2 ("PENAC's protective order motion"), filed Sept. 21, 2007 (Doc. 75).  The semiconductor manufacturing tools on the property were used and sold by Philips Semiconductors, Inc., which was a separate part of Koninklijke Philips Electronics N.V ("Royal Philips"). See id.  In September of 2006, Royal Philips sold the semiconductor business, and a new company was formed, NXP Semiconductor, Inc. ("NXP").  See id.

PENAC's ultimate parent, Royal Philips, retained only a 19.9 percent interest in NXP.  See id. A consortium -- including Kolbert, Kravis, Roberts & Co., Bain Capital, Silverlake Partners, and Apak and Alpinvest Partners N.V. -- owns the remaining 80.1 percent interest.  See id.  Neither PENAC nor Royal Philips controls NXP.  See id.

Employees who were involved with the semiconductor business at the Albuquerque facility either no longer work for any Philips company or  have little or no personal knowledge of the events or transactions relating to the semiconductor facility.   See id.  Moreover, the documents of the semiconductor company now belong to NXP; no Philips entity has them.  See id.

## PROCEDURAL BACKGROUND

The Court established a discovery deadline of October 3, 2007.  See Revised Scheduling Order at 1, filed Sept. 25, 2007 (Doc. 77).   The Order provides that discovery should be planned so that it is completed by that deadline.  See id.  ("Accordingly, the termination date for discovery is **October 3, 2007**, and discovery shall not be reopened, nor shall case management deadlines be modified, except by an order of the Court upon a showing of good cause. This deadline shall be construed to require that discovery be completed on or before the above date.")(emphasis in the original).

Gulfstream served a 30(b)(6) Notice of Deposition Duces Tecum on PENAC on June 6, 2007.  See PENAC's protective order motion at 1.  Gulfstream vacated that deposition, without indicating that it would be rescheduled.  See id. at 1-2.  The parties proceeded with discovery.

The real estate sale has been covered so far in over a dozen depositions.  See Reply to Plaintiff's Response to Philip's Motion for Protective Order ("PENAC's Reply") at 3, filed Oct. 8, 2007 (Doc. 92).

On September 18, 2007, two weeks before the October 3, 2007 discovery deadline, without prior warning, Gulfstream issued and served a new rule 30(b)(6) Notice of Deposition Duces Tecum on PENAC for a deposition to take place in ten days, on 9:00 a.m. September 28, 2007.  See PENAC's Reply at 1;Gulfstream's Response, Exhibit 1, Notice of 30(B)(6) Deposition ("Notice of 30(b)(6) Depo."), filed Oct. 2, 2007 (Doc. 90-2).   Gulfstream wants someone to testify about the following:

> For the time period beginning January 2, 2003 to the present, all sales, transfers, allocation or donations of property to any of Philips' companies, subsidiaries, affiliates, related entities and/or unrelated third parties.  As used herein, "property" shall mean all real and personal property located at 9201 Pan American Freeway, NE, Albuquerque, NM as of January 22, 2003, including but not limited to tools, equipment, computers, furnace stacks, etchers, telephone equipment, and foundry equipment.

Notice of 30(b)(6) Depo.  Gulfstream did not ask for production of ledgers or similar accounting documents.  See PENAC's Reply at 3.

On September 21, 2007, PENAC filed its motion for a protective order.  See PENAC's protective order motion.  PENAC contends that, to meet its obligation with respect to a 30(b)(6) deposition, it will have to designate one or more individuals to learn what happened to the tools and real property that were sold from the Albuquerque facility.  See PENAC's protective order motion at 3.  PENAC  argues that the designated person or persons will, after designation, have to spend

substantial time reviewing extensive documentation as well as checking with employees of PENAC and perhaps others to able to testify.  <u>See</u> PENAC's protective order motion at 3-4.  PENAC represents that anyone who is designated to testify as a 30(b)(6) witness would probably not be able to gather the requested information or determine that PENAC collectively does not have that information by September 28, 2007.  <u>See</u> PENAC's protective order motion at 4.

PENAC argues that it must rely upon NXP to provide accounting documents and ledgers and, therefore, must be given sufficient time to allow its designated witness to review those documents and become sufficiently familiar with them to testify about them.  <u>See</u> PENAC's reply at 2.  PENAC accuses Gulfstream of attempting to evade rule 30(b)(5) and rule 34 of the Federal Rules of Civil Procedure by requiring PENAC's designated witness to testify about what the documents say rather than to seek the documents themselves not asking it to produce the ledgers or accounting documents themselves.  <u>See</u> PENAC's Reply at 3.  PENAC contends that Gulfstream has also violated local district court rule 30.1 requiring that a Notice of Deposition be served at least fourteen days prior to the scheduled deposition.  <u>See</u> PENAC's Reply at 1.  PENAC argues, alternatively, that if the deposition is not barred, Gulfstream should be required to take the deposition in New York City or "at such other place as the designee may be located."  PENAC's protective order motion at 4. PENAC also requests that it be allowed sufficient time to locate or educate an appropriate designated witness if the rule 30(b)(6) deposition proceeds.  <u>See</u> PENAC's Reply at 5.

Gulfstream opposes PENAC's protective order motion.  <u>See</u> Response to Philips Motion for Protective Order ("Gulfstream's Response), filed Oct. 2, 2007 (Doc. 90).  Gulfstream contends the 30(b)(6) deposition it seeks is necessary because Gulfstream has been unable "to get the complete picture of what happened to property" in this matter.  Gulfstream's Response at 2. Gulfstream states

that, on March 23, 2007, it issued its discovery requests asking for all sales of PENAC's property during the term of the listing agreement.  See id. at 1.  Gulfstream argues that PENAC filed its motion for a protective order rather than requesting alternative arrangements from Gulfstream for the 30(b)(6) deposition.  See id. at 2.  It also argues that PENAC has deliberately withheld discoverable information which caused Gulfstream to have to secure the information via subpoena of PENAC's current and former employees.  See id.  Gulfstream argues it would not have been a hardship for an accounting person "to simply review the accounting documents and appear for the deposition."  Id. at 3.  Gulfstream represents it "would have been amenable to conducting the 30(b)(6) deposition in the time and manner Philips suggested (if the person designated was not an officer of Philips who should be prepared to testify here), and would have agreed to such logistical matters if Philips had raised such matters with Gulfstream."  Id. at 4.  Gulfstream notes that it had no idea what area of the country would be convenient for such a witness because PENAC did not raise logistical concerns with it.  See id.

The Court held a hearing on this matter on October 12, 2007.  See Transcript of Hearing ("Tr.") (taken Oct. 12, 2007).[1]  At that hearing, Gulfstream conceded that the rule 30(b)(6) witness did not need to be prepared to testify about the real estate transactions.  See Tr. at 8:11-15 (Court & Chappell). Gulfstream argued that its rule 30(b)(6) deposition was partially delayed because PENAC did not produce discovery documents until the end of August.  See Tr. at 8:19-25 (Chappell).  PENAC acknowledged that, on August 15th, it produced 3,200 pages of documents to Gulfstream.  See Tr. at 9:15-18 (McCormick).  PENAC also acknowledged that preparation of the 30(b)(6) designated witness would be faster if that witness would not need to be prepared to testify

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

about the real property transactions.  See Tr. at 10:4-6 (McCormick).

Pursuant to rule 26(c), PENAC moves the Court for an order vacating the deposition or, in the alternative, requiring that the deposition be taken at the witness' location, which will likely be somewhere other than Albuquerque, and that PENAC be allowed sufficient time to locate or educate an appropriate designated witness.  See PENAC's Reply at 5.

## LAW REGARDING PROTECTIVE ORDERS

"Federal district courts have broad discretion over discovery."  Morales v. E.D. Etnyre & Co., 229 F.R.D. 661, 662 (D.N.M. 2005) (Browning, J).  District courts may also issue a protective order if "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  "It is the party seeking the protective order who has the burden to show good cause for a protective order."  Velasquez v. Frontier Medical Inc., 229 F.R.D. 197, 200 (D.N.M. 2005).  The party seeking the protective order "must submit a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Id. (quoting Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16 (1981)).  See Miller v. Regents of the Univ. of Colo., 88 F.3d 518 (Table), 1999 WL 506520 *11-12 (10th Cir. 1999) ("The district court is in the best position to weigh these variables because, unlike an appellate court, the district court has the ability to view firsthand the progression of the case, the litigants, and the impact of discovery on parties and nonparties.").

## RULE 30(b)(6)

Rule 30(b)(6) of the Federal Rules of Civil Procedure provides:

A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf,

and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

Fed. R. Civ. P. 30(b)(6).  As the United States District Court for the District of Connecticut has recognized:

A deponent under Rule 30(b)(6) has an affirmative obligation to educate himself as to the matters regarding the corporation.  This includes all matters that are known or reasonably available to the corporation.  Even if the documents are voluminous and the review of the documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed.

Concerned Citizens v. Belle Haven Club, 223 F.R.D. 39, 43 (D. Conn. 2004) (internal citations and quotations omitted).  The court went on to hold that this duty to review, and in essence become educated about the information available to the corporation, applies even if the information is voluminous and multiple people must be consulted to collect the information known to the corporation.  See id.

The United States District Court for the District of Utah recently ruled the same way, holding that the entity receiving a 30(b)(6) notice has a duty

to prepare those persons in order that they can answer fully, completely, unevasively the questions posed . . . as to the relevant subject matters. [ . . . ] The duty to prepare the designee imposed by the rule goes beyond matters personally known to the designee or to matters in which that designee was personally involved.  Such preparation requires a good faith effort [by] the designate to find out the relevant facts -- to collect information, review documents, and interview employees with personal knowledge.  The duty of preparation may require the interviewing of past employees.

United States v. Magnesium of Am., No. 2:01-CV-40DB, 2006 U.S. Dist. LEXIS 87734 at *16 (D.Utah Nov. 27, 2006) (Nuffer, J.) (internal quotations omitted).  "A corporation must prepare its designated representative to provide complete, knowledgeable, and binding answers on the

corporation's behalf." Faniola v. Mazda Motor Corp., No. CIV-02-1011, Memorandum Order and Opinion at 4, filed Apr. 20, 2004 (Doc. 170) (Browning, J.). The purpose behind designating a witness to represent the corporation "is to prevent 'bandying,' which is the practice of presenting employees for their depositions who disclaim knowledge of the facts known by other individuals within the organization." Id. (quoting Hooker v. Norfolk Ry. Co., 204 F.R.D. 124, 126 (S.D. Ind. 2001)).

## LOCATION OF RULE 30(b)(6) DEPOSITIONS

"Because the Plaintiff has greater influence over the choice of forum, courts are more willing to protect the defendant from having to come to the forum for the taking of his or her deposition than they are in the case of plaintiffs." O'Sullivan v. Rivera, 229 F.R.D. 187, 189 (D.N.M. 2004) (Browning, J.). In O'Sullivan v. Rivera, neither the defendant nor his trucking company maintained a residence in New Mexico. See id. at 188. The plaintiff believed he was entitled to take that defendant's deposition at his counsel's office in Albuquerque, New Mexico, despite the defendant's representation that it would be severe financial hardship. See id. The Court held that the Plaintiff was not entitled to take an out-of-state defendant's deposition in New Mexico under those facts and circumstances. See id. at 189.

"Generally, if the deponent lives a great distance from the deposing party, then the deposition takes place near the location of the out-of-state deponent." Id. at 189 (citing Metrex Research Corp. v. United States, 151 F.R.D. 122, 125 (D.Colo. 1993). Unless there are "exceptional or unusual circumstances, when a deponent resides at a substantial distance from the deposing party's residence, the deposing party should be required to take the deposition at a location in the vicinity in which the deponent resides, even if the deponent is a party." O'Sullivan v. Rivera, 229 F.R.D. at 189. See Ice Corp. v. Hamilton Sundstrand Corp., No. 05-4135-JAR, 2007 WL 1500311 at * 4 (D. Kan. May 21,

2007) (Sebelius, M.J.)(internal quotations omitted)(holding that "[a]n initial presumption exists that a defendant should be examined at his residence or the principle place of business" that can be overcome by "a showing that factors of cost, convenience, and efficiency weigh in favor of a different location."); Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd., 242 F.R.D. 1, 5-6 (D.D.C. 2007) (stating that, "[a]s a general policy, the Court encourages parties to set depositions in mutually agreeable locations."); Schindler Elevator Corp. v. Otis Elevator Co., No. 06 Civ. 5377 (CM)(THK), 2007 WL 1771509 at * 8 (S.D.N.Y. June 18, 2007) (Katz, J.) (noting that "the decision as to the location of the deposition lies within the discretion of the Court.").

Thus, when the plaintiff sets the deposition of a corporate defendant's employee, the employee is entitled to have his deposition taken at his residence or where he works.  C.f. Magnus Electronics v. Masco Corp. of Indiana, 871 F.2d 626, 630 (7th Cir. 1989) (noting that, "[a]s a general rule, the deposition of a corporation by its agents and officers should be taken at its principal place of business.")(internal quotations omitted).   This rule also applies to 30(b)(6) deposition of the corporate defendant.  See McDougal-Wilson v. Goodyear Tire & Rubber Co., 232 F.R.D. 246, 249 (E.D.N.C. 2005) (holding that, "[a]lthough the plaintiff correctly notes that the court has the power to permit a Rule 30(b)(6) deposition to take place at a place other than the corporation's principal place of business, the plaintiff has failed to overcome the presumption that the deposition of a corporation should take place at the corporation's principal place of business.");Starlight Int'l Inc. v. Herlihy, 186 F.R.D. 626, 644 (D.Kan. 1999)("The burden to show the principal place of business for purposes of locating a deposition rests with the party seeking protection to relocate the deposition."). County Council of Northampton County v. SHL Systemhouse Corp., No. CIV A. 98-0088, 1999 WL 269918, at *2 (E.D. Pa. Apr. 20, 1999)(Rueter, M.J.)("The deposition of a corporate agent or officer should ordinarily be held at the principal place of business.").

## LOCAL RULES

According to the Tenth Circuit, the Court's local rules have the force of law.  See Smith v. Ford Motor Co., 626 F.2d 784, 796 (10th Cir. 1980)(quoting Woods Constr. Co. v. Atlas Chem. Indus., Inc., 337 F.2d 888, 890 (10th Cir. 1964)).  "[L]ocal rules of practice, as adopted by the district court, 'have the force and effect of law, and are binding upon the parties and the court which promulgated them until they are changed in [an] appropriate manner.'" Smith v. Ford Motor Co., 626 F.2d at 796 (quoting Woods Constr. Co. v. Atlas Chem. Indus., Inc., 337 F.2d at 890). "[A]lthough district judges must follow local rules when adherence furthers the policies underlying the rules, they have discretion in applying and interpreting local rules." Hernandez v. George, 793 F.2d 264, 267 (10th Cir. 1986).

The Court's local rules require fourteen-days notice for a deposition. "Service of notice of deposition in accordance with Fed. R. Civ. P. 30(b) must be made at least fourteen (14) calendar days before the scheduled deposition."  D.N.M.LR-Civ. 30.1.

## RULE 30(b)(1)

Rule 30(b)(1) of the Federal Rules of Civil Procedure requires parties to give each other reasonable notice of taking oral deposition of any person.  See Fed. R. Civ. P. 30(b)(1) (stating that, "[a] party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action.").  "The reasonableness of notice must be determined under the circumstances of each case." C & F Packing Co., Inc. v. Doskocil Companies, Inc., 126 F.R.D. 662, 678 (N.D. Ill. 1989).  See Mims v. Central Mfrs. Mut. Ins. Co., 178 F.2d 56, 58-59 (5th Cir. 1949) (holding that four days' notice of the intention to take fifteen depositions on one day in Boston, Chicago, San Francisco, St. Louis, Alliance, Ohio, Cincinnati, Baltimore, Philadelphia, Birmingham, and Dallas,  and seven days' notice of intent to depose a witness in New

York was unreasonable under rule 30 of the Federal Rules of Civil Procedure.); <u>In re Sulfuric Acid Antitrust Litigation</u>, 231 F.R.D. 320, 327 (N.D. Ill. 2005) (holding that, ten business days' notice is unreasonable when a case is "exceedingly complex, the depositions are to occur virtually hours before the discovery cut-off, and it was obvious -- or at least probable -- that the schedules of the deponents and a number of lawyers would be unable to accommodate the belatedly filed notices."); <u>Jones v. United States</u>, 720 F.Supp. 355, 366 (S.D.N.Y. 1989) (holding that eight days' notice is reasonable under the circumstances when deponent's physical condition was serious enough to prevent him from appearing at trial under rule 32(a)(3)(C) of the Federal Rules of Civil Procedure); <u>Spangler v. Southeastern Greyhound Lines</u>, 10 F.R.D. 591 (E.D. Tenn. 1950) (holding that nine days' notice between notice of intent to take depositions and trial date was unreasonable.).

## <u>ANALYSIS</u>

PENAC's designee will have to look through documents, contact present and former employees, and attempt to integrate the information that Gulfstream requested so that he or she can provide answers on PENAC's behalf responsive to Gulfstream's rule 30(b)(6) deposition notice. Because it appears that the amount of time required for the designated witness to be prepared will be substantial, and that Gulfstream did not comply with the notice requirements for deposition under local rule 30.1, the deposition will be vacated. Gulfstream will be allowed, however, to take the rule 30(b)(6) deposition in New York or at such other place as the designee may be located, but that is fairly accessible from Albuquerque, New Mexico.

## I.    GULFSTREAM DID NOT PROVIDE THE NOTICE THAT LOCAL CIVIL RULE 30.1 REQUIRES.

This dispute arises out of Gulfstream's September 18, 2007 30(b)(6) Notice of Deposition for a September 28, 2007 deposition.  <u>See</u> Notice of 30(b)(6) Depo.  Had PENAC sought to serve

the present notice at the time that it vacated the June deposition, there is no dispute that it would have been reasonable to ask PENAC to provide a 30(b)(6) witness.  Gulfstream, however, chose to wait until the waning days of discovery to serve that notice.  <u>See</u> Revised Scheduling Order at 1, filed Sept. 25, 2007 (Doc. 77) (establishing a discovery deadline of October 3, 2007.) .

PENAC represents that Gulfstream could not have asked for production of ledgers or similar accounting documents themselves from PENAC, because PENAC is allowed thirty days from such a request to respond to it, which could have put PENAC's response date beyond the October 3, 2007 discovery deadline.  <u>See</u> PENAC's Reply at 3 (citing Fed. R. Civ. P. 30(b)(5) and Fed. R. Civ. P. 34).  PENAC suggests that Gulfstream is using this late-noticed deposition as a means of avoiding the Court's discovery deadline.  The Court shares some concern about Gulfstream's timing and use of the rule 30(b)(6) notice at this stage of the case.

Gulfstream acted contrary to the Court's local rule 30.1, which requires that a Notice of Deposition be served at least fourteen days before the scheduled deposition.  <u>See</u> D.N.M.LR-Civ. 30.1.  Gulfstream offers no explanation for why it could not have served the notice within the time set out by the Court's rules.  <u>See</u> Tr. at 8:19-25 (Chappell). Rather than explain why Gulfstream could not observe the Court's local rule 30.1, Gulfstream alleges that PENAC "has deliberately withheld discoverable information on the sales, transfers, allocations and donations of property." Gulfstream's Response at 2.

Gulfstream does not substantiate its allegations, and at the hearing on this matter Gulfstream admitted receiving discovery from PENAC in August, 2007.  <u>See</u> Tr. at 8:19-25 (Chappell). Moreover, PENAC reasonably represents  that this item of discovery could not be completed by October 3, 2007.  <u>See</u> PENAC's Reply at 1.  Gulfstream's notice to take a rule 30(b)(6) deposition is untimely under D.N.M.LR-Civ. 30.1.

II.     **THE COURT WILL VACATE THE DEPOSITION.**

The deposition may encompass everything relating to the sale of personal property involved in this matter.  See Tr. at 8:11-15 (Court & Chappell).  If PENAC is to be held to the requirement that its designee know or learn about "all sales, transfers, allocations, or donation of property to any of Philips' companies, subsidiaries, affiliates, related entities, and/or unrelated third parties," Notice of 30(b)(6) Depo., its designee will have to assimilate large amounts of information from various sources.  PENAC represents that a significant part of that information resides with people whom it no longer employs and in documents that it no longer owns.  See PENAC's Reply at 3-4.  It is not reasonable to expect that to be done before September 28, 2007 or by the discovery deadline of October 3, 2007.

Gulfstream suggests it will be no hardship for an accounting person, or Ajit Monocha,[2] to review the accounting documents and be prepared to answer questions on the matter in its rule 30(b)(6) notice.  See Gulfstream Response at 3.  Gulfstream states that "employees and former employees have indicated information . . . should be readily available in general ledgers or similar accounting documents." Gulfstream Response at 3. An examination of the subject of the 30(b)(6) deposition, however, suggests that may not be possible.  See Notice of 30(b)(6) Depo.

PENAC represents that ledgers or accounting documents to which Gulfstream refers belong to a third party, NXP, and not to PENAC or to any Philips company.  See PENAC's Reply at 4.  PENAC represents that it must rely on NXP to provide the documents.  See id.  Then, when and if PENAC obtains those documents, PENAC's designated witness would need time to review them

---

[2]Mr. Manocha is apparently in charge of PENAC manufacturing facilities in Asia, North America and Europe.  See Transcript of Hearing (taken Oct. 12, 2007) at 9:8-11 (McCormick).  The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

to become sufficiently familiar with those documents to testify about them.  <u>See</u> PENAC's Reply at 2.

Even if Gulfstream's rule 30(b)(6) Notice of Deposition complied with local rule 30.1, obtaining the documents and educating the designated 30(b)(6) witness may have taken longer than two weeks, which could have put the deposition beyond the Court's discovery deadline.   The deposition may or may not be limited to discreet issues involving a few ledger pages.  PENAC has made a reasonable showing that it needs more time to prepare for the deposition, and the Court will thus vacate the deposition set for September 28, 2007.

## III.    <u>THE COURT WILL NOT PRECLUDE THE DEPOSITION.</u>

Given that Gulfstream did not, in scheduling the deposition, comply with the Court's local rules or its scheduling order, and because it appears that Gulfstream may be attempting to get information about documents without securing the documents themselves, the Court would be on firm ground in precluding the deposition entirely at this late date.  Implicit in Gulfstream's response, however, is a request for extension of the discovery deadline to secure this one deposition.  If Gulfstream had been more explicit, the Court would have been inclined to find good cause and extend the deadline for this one deposition.

The corporate structure for PENAC and NXP has been confusing at times, and the successor or new corporation has made discovery somewhat more difficult.  This case has generated a greater number of discovery disputes than the average civil case.  While the Court is not casting blame on any party, or finding PENAC responsible for the delay, Gulfstream's excuse for delay in setting this deposition is understandable.   The parties appear to have cooperated with discovery after the October 3, 2007 deadline.  <u>See</u> Transcript of Hearing (Oct. 4, 2007)  at 124:8-10 (Chappell).Given the narrowed scope of the 30(b)(6) deposition to personal property and not real property, it makes

sense to allow Gulfstream to complete this one deposition so that the factual discovery can be completed before the parties gear up for trial.

PENAC suggests that the deposition requested cannot be done.  PENAC contends that the designated witness and information Gulfstream seeks cannot be produced in the manner in which Gulfstream seeks them.  See PENAC's Reply at 2-3.  PENAC states that there is no one at PENAC who can respond to Gulfstream's particular request.  See PENAC's Reply at 4.  As PENAC implicitly concedes, however, that employees with personal knowledge have left the corporate party does not protect that corporation from its obligation to produce someone to answer questions at a deposition.  See Canal Barge Co. v. Commonwealth Edison Co., No. 98 C 0509, 2001 WL 817853 at *3 (N.D.Ill. July 19, 2001) (Nolan, M.J.)(internal quotations omitted) (holding that a corporation has a duty to designate a witness under rule 30(b)(6), even if "many of its most knowledgeable employees on these topics" now work for the party with whom it is having the legal dispute, because, even "if none of defendant's current employees has sufficient knowledge to provide plaintiffs with the requested information, defendant is obligated to prepare [one or more witnesses] so that they may give complete, knowledgeable and binding answers on behalf of the corporation."); Jakob v. Champion Intern. Corp., No. 01 C 0497, 2001 WL 1442514 at * 1 (N.D. Ill. Nov. 15, 2001)(Mason, M.J.)(holding that the corporation has to produce a 30(b)(6) deponent, even if the corporation "no longer has any employees with personal knowledge of the case, and thus, its answers would merely mimic its discovery responses," because the plaintiff has "the right to take a 30(b)(6) deposition of [the corporation], regardless of whether the company currently has any employees with actual knowledge of the events in the complaint.").

The Court will expect PENAC's witness to become completely educated about the subject of the deposition. See United States v. Magnesium of Am., 2006 U.S. Dist. LEXIS 87734 at *16;

Concerned Citizens v. Belle Haven Club, 223 F.R.D. at 43.  Whoever is designated as the witness will have to first collect the information, which may or may not be easily accessible through NXP, and then study and analyze the information to be able to testify about it.  The information required may not be limited to what might be in the accounting documents.  Such a witness may also need to talk to former employees about the transfer of personal property.  See PENAC's reply at 4.

## IV.    THE COURT WILL REQUIRE THE DEPOSITION TO BE IN NEW YORK OR AT SUCH OTHER PLACE AS THE DESIGNEE MAY BE REASONABLY LOCATED.

The record does not inform the court where PENAC's principal place of business, as a corporation, is.  See Complaint for Breach of Contract, Promissory Estoppel and Quantum Meruit, and Demand for a Jury Trial ("Complaint")  ¶¶ 2, 4, at 1, filed Nov. 30, 2006 (Doc. 1)(stating that PENAC "is a Delaware corporation which was doing business in the state of New Mexico at all times relevant to this action" and "[u]pon information and belief, [PENAC] has its citizenship and domicile in the state of New York."); Answer ¶ 1, at 1, filed Jan. 5, 2007 (Doc. 4).  Nevertheless, there is nothing in the record to suggest that it is in New Mexico.  See Complaint ¶¶ 2, 4, at 1; Answer ¶ 1, at 1.  Indeed, the record suggests that PENAC has moved out of the state.  See Motion for Protective Order, at 2, filed Sept. 21, 2006 (Doc. 75) (noting that, PENAC's parent company sold the semiconductor business located in Albuquerque, and a new company, NXP Semiconductor, Inc. was formed.); Affidavit of James Casey ¶ 3, at 1(taken July 30, 2007), filed July 31, 2007 (Doc. 49) (stating that, in 2002, NXP decided to discontinue operations in Albuquerque and sell the semiconductor manufacturing site).

Gulfstream, as the plaintiff in this matter, not PENAC, chose the forum.  PENAC argues, alternatively, that, if the deposition is not canceled, the Court should require Gulfstream to take the deposition in New York City, where PENAC is currently headquartered, or at such other place as

-16-

the designee may be located.  See PENAC's protective order motion at 4-5.  Gulfstream has made no effort to demonstrate that unusual circumstances justify deviating from the usual rule.

The Court will not allow Gulfstream to burden PENAC further by requiring it to produce the designated individual somewhere remote from that person's normal place of work or residence.  No unusual or exceptional circumstances exist in this case to warrant a reversal of the normal rule.  See O'Sullivan v. Rivera, 229 F.R.D. 187, 188 (D.N.M. 2004).   New York City is a reasonable location and is readily accessible by plane from Albuquerque.

There may be other places at which PENAC can produce its witness, or the parties might agree to have Gulfstream fly the witness or witnesses, at its expense, to Albuquerque.  While the Court is not prepared to say, at this time, that a trip to Europe or a remote United States' destination would be reasonable, the Court believes that it has given the parties sufficient guidance to schedule the deposition.  If they cannot agree on a location, or the amount of time it will take PENAC to get its witness ready, they may call the Court's Courtroom Deputy Clerk, and the Court will set up a telephonic hearing to iron out the remaining details.

**IT IS ORDERED** that the Defendant's Motion for Protective Order is granted in part and denied in part.  The 30(b)(6) deposition set for September 28, 2007 is vacated, but not precluded entirely.  The deposition will be rescheduled.  It will be taken at a place convenient to the designated witness for PENAC, but somewhere that is also fairly accessible from Albuquerque, New Mexico.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Bill Chappell, Jr.
Martha L. King
Michael D. Hoeferkamp
Chappell Law Firm
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Arthur D. Melendres
Zachary L. McCormick
Joan D. Marsan
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

      *Attorneys for the Defendant*

Eric R. Burris
Brownstein Hyatt Farber Schreck, P.C.
Albuquerque, New Mexico

      *Attorneys for Respondent to Subpoena*
        *Duces Tecum*